## Richmond.

## W. C. PATTERSON'S EXECUTORS, ET ALS. v. EDITH PATTERSON, ET ALS.

January 14, 1926.

1. DECLARATORY JUDGMENTS ACT—*Constitutional Law—Declaratory Judgments Act Held Constitutional.*—The declaratory judgments act (Acts 1922, page 902, sections 6140a-6140h of the Code of 1924), providing that in cases of actual controversy courts of record within the scope of their respective jurisdictions shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceeding shall be open to objection on the ground that a judgment or order merely declaratory of right is prayed for, is constitutional.

2. DECLARATORY JUDGMENTS ACT—*Actual Controversy—Actual Antagonistic Assertion and Denial of Right—Case at Bar.*—In the declaratory judgments act (Acts 1922, page 902, sections 6140a-6140h of the Code of 1924) the words "actual controversy," and "actual antagonistic assertion and denial of right," were intended to prevent the consideration of moot questions by the court, and not to deprive the courts of jurisdiction to enter a declaratory decree where, as in the instant case, there is actual antagonistic assertion and denial of right. In the instant case, the bill avers that the purchasers of the lots in question had a right to retain them in their possession and have their titles to them confirmed, while the cross-bill of the infant defendants asserts that the purchasers had no right to the lots, and asked that these defendants' ownership of an undivided one-half interest in the lots should be established by the court.

3. DECLARATORY JUDGMENTS ACT—*Purpose and Effect of the Act.*—The effect of the declaratory judgments act (Acts 1922, page 902, sections 6140a-6140h of the Code of 1924) is to increase the usefulness of the courts and remove doubt and uncertainty as to the final result of legal controversies, by empowering the courts to enter declaratory judgments and decrees touching the rights of the parties in such cases.

4. DECLARATORY JUDGMENTS ACT—*Effect of Act—Res Adjudicata—Advisory Opinions Only.*—The declaratory judgments act (Acts 1922, page 902, sections 6140a-6140h of the Code of 1924) contemplates that the parties to the proceeding shall be adversely interested in the matter as to which the declaratory judgment is sought and their

relation thereto such that a judgment or decree will operate as *res adjudicata* as to them. It authorizes the entry of such judgment before the right is violated, and even though no consequential relief is or could be asked for or granted. It does not, however, confer upon the courts the power to render judicial decisions which are advisory only.

5. Declaratory Judgments Act—*Purchasers of Land from Executors—Bill to Establish Title as Against the Children of a Devisee—Case at Bar.*—Construing the declaratory judgments act (Acts 1922, page 902, sections 6140a-6140h of the Code of 1924) liberally, it is clear that in the instant case complainants had a right to maintain their bill. Complainants were purchasers of land from executors who under the will had no right to sell the land. Defendants were infant heirs of a devisee of the land. This devisee had assented to the sale. To hold that the purchasers could not avail themselves of the statute, and have their rights adjudicated and settled, until such time as the infant defendants might see fit to sue to recover possession of the land, would be to defeat the object and purpose of the act.

6. Executors and Administrators—*Sale of Land of Testator by Executors Without Authority—Ratification by Devisee—Case at Bar.*—A devisee of land which had been sold by the executors without authority acquiesced in the opinion of the executors, honestly entertained by them, that they had the right to sell the land. He was present at the public sale of the land which was devised to him and encouraged those present to bid on it. He saw the purchasers buy the land and take possession of it and subsequently receipted to the executors for his portion of the purchase money.

*Held:* That such action on his part constituted ratification and is conclusive on all who claim under him. He was estopped by his conduct from contesting the title of the purchasers, and his children as his heirs at law could occupy no higher position than their father, but held their father's interest in the land in trust for the purchasers thereof.

7. Trusts and Trustees—*Constructive Trusts.*—Constructive trusts have been said to arise through the application of the doctrine of estoppel, or under the broad doctrine that equity regards and treats as done what in good conscience ought to be done. Their forms and varieties are practically without limit, being raised by courts of equity whenever it becomes necessary to prevent a failure of justice.

8. Estoppel—*Vendor and Purchaser—Owner of Land Holding Out Another as Owner.*—Where the true owner of property, for however short a time, holds out another, or, with knowledge of his own right, allows another to appear as the owner of, or as having full power of disposition over the property, the same being in the latter's possession, and innocent third parties are thus led into dealing with such apparent

owner, they will be protected. The rule applies to heirs who assent to and encourage the sale of land by an executor who has no authority under the will to make such a sale.

Appeal from a decree from the Circuit Court of Rockingham county. Decree for defendants. Complainants appeal.

*Reversed and final decree.*

The opinion states the case.

*Chas. A. Hammer*, for the appellants.

*Ward Swank*, for the appellees.

WEST, J., delivered the opinion of the court.

This is a chancery suit in which C. L. Weast, G. K. Foster, executors of William C. Patterson, deceased, and Verdie P. Weast are complainants, and Edith Patterson, Jacob F. Patterson, Blanche A. Leap, Kathleen Patterson, Craig Patterson and William C. Patterson, Jr., are defendants.

The bill alleges the death of William C. Patterson and the probate of his last will and testament, a copy of which is filed with and made a part of the bill.

Among the other allegations contained in the bill are the following: That the complainant, Verdie P. Weast, Blanche A. Leap, Jacob F. Patterson and Floyd A. Patterson are all of the children of the testator, and are named as beneficiaries in his will; that Floyd A. Patterson departed this life since the death of the testator, leaving surviving him his widow, Edith Patterson, and his three children, Kathleen, Craig and William C. Patterson, Jr., who are infants under the age of fourteen years; that the lots of land in con-

troversy, located in the town of Grottoes, were disposed of by the eighth paragraph of the testator's will, by which they were devised to Floyd A. Patterson and Verdie P. Weast, in equal shares; that the executors, being of the opinion that they had the power, under the will, to sell these lots, sold them at public auction to the highest bidders, at which sale Verdie P. Weast purchased seven lots, J. S. Pirkey two lots and J. E. Eutsler two lots; that the executors executed deeds to the purchasers and placed them in possession of the lots; that the purchasers have made valuable improvements upon the lots; that the proceeds of the sales, with the knowledge and consent of Floyd A. Patterson and Verdie P. Weast, who were present at the sale, went into the hands of the executors and by them were distributed as a part of the testator's estate, Floyd A. Patterson receiving his portion of the fund; that the executors made final settlement before the commissioner of accounts in which they accounted for the proceeds of the sale of lots sold by them, and showed payment of the fund to Floyd A. Patterson and Verdie P. Weast; that Floyd A. Patterson thereafter died intestate, leaving surviving him his widow and three infant children above mentioned; that Floyd A. Patterson having seen the purchasers buy the lots and seen them in possession, and having received his portion of the purchase money was bound to carry such sales into effect, and he having died intestate, his heirs at law, upon whom the title to the lots descended, are estopped from questioning the title of the purchasers and will be required to carry out said purchases.

The prayer of the bill is that the will of William C. Patterson be construed and that the sales made by the executors be ratified, approved and confirmed, and that a commissioner be appointed to convey the interests

of the infant defendants in the lands on those entitled thereto, by deeds in which Edith Patterson may unite, and that the titles of the vendees to the lots sold them may be declared firm and stable; and for general relief.

Jacob F. Patterson and Blanche A. Leap filed answers saying they had no interest in the lots sold, and therefore had no objection to the confirmation of the sales to the purchasers. The purchasers, who were also parties, filed answers saying they had put valuable improvements on the lots purchased by them in good faith and as Floyd Patterson received his portion of the purchase price his heirs are estopped from claiming title to the lots. Edith Patterson filed her answer saying her husband, Floyd A. Patterson, was paid his proportion of the purchase money received from such sales, and that she does not claim dower in the lots, or any of them, and is willing to unite in any conveyance which may be necessary to make the title of the grantees of the executors and those claiming under them firm and stable. The infant defendants, Kathleen Patterson, Craig Patterson and William C. Patterson, Jr., filed their answer and cross-bill, by Ward Swank, their guardian *ad litem,* in which they deny that the executors were authorized by the will to sell or convey any of the real estate of which William C. Patterson died seized, and aver that the acts of the executors in attempting to make such sales and conveyances are void and did not divest the respondents of their interests in said real estate. They say they are all infants under the age of five years and have been guilty of no acts or conduct respecting the real estate in question which would now estop them from asserting their legal right to their interests therein. They aver that the rule of "*caveat emptor*" applies to sales of real estate by

executors and that it was incumbent upon the purchasers to ascertain from the will, which was of record, what power the executors had to make such sales. They further aver that they are entitled, as the heirs of their father, to an undivided one-half interest in all of the said real estate; that the improvements were placed thereon since the death of their father, without their knowledge or consent, and that they are entitled to said real estate in its present condition, without allowance to any one for any improvements placed thereon. They pray that a proper decree may be entered establishing their ownership of a one-half undivided interest in said real estate and quieting their title thereto.

The case was heard upon the foregoing pleadings and the depositions of witnesses taken in behalf of the complainants, and the decree now under review was entered dismissing the complainants' bill.

The question for our determination is, can the complainants maintain their bill, and are they entitled to the relief prayed for?

[1] The complainants' bill and the cross-bill of the infant defendants are, in effect, bills *quia timet*, and the jurisdiction of equity to declare and establish such rights, whether heretofore properly exercised by courts of equity or not, is clearly conferred upon them by the declaratory judgments act, approved March 28, 1922, (Acts 1922, p. 902). Section 1 of the act provides, in part, as follows: "In cases of actual controversy courts of record within the scope of their respective jurisdictions shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceeding shall be open to objection on the ground that a judgment or order merely declaratory of right

is prayed for. Controversies involving the interpretation of deeds, wills, and other instruments in writing * * * may be so determined, and this enumeration does not exclude other instances of *actual antagonistic assertion* and *denial of right.*" (Italics ours.)

Section 5, clause fourth, refers in terms to suits or actions "to declare a right to, in or with reference to land or other real estate * * ."

Section 8 says the act is remedial, and that "its purpose is to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor;" and that the act "is to be liberally interpreted and administered with a view of making the courts more serviceable to the people."

[2] The words "actual controversy," and "actual antagonistic assertion and denial of right," were intended to prevent the consideration of moot questions by the court, and not to deprive the courts of jurisdiction to enter a declaratory decree where, as in the instant case, there is actual antagonistic assertion and denial of right. The bill avers that the purchasers of the lots have a right to retain them in their possession and have their titles to them confirmed, while the cross-bill of the infant defendants asserts that the purchasers have no right to the lots and that these defendants' ownership of an undivided one-half interest in them should be established by the court.

[3] We find nothing in the statute which contravenes any of the provisions of the State or Federal Constitutions. Its effect is to increase the usefulness of the courts and remove doubt and uncertainty as to the final result of legal controversies, by empowering the

courts to enter declaratory judgments and decrees touching the rights of the parties in such cases.

[4] The act contemplates that the parties to the proceeding shall be adversely interested in the matter as to which the declaratory judgment is sought and their relation thereto such that a judgment or decree will operate as *res adjudicata* as to them. It authorizes the entry of such judgment before the right is violated, and even though no consequential relief is or could be asked for or granted. It does not, however, confer upon the courts the power to render judicial decisions which are advisory only.

In *Russian Commercial & Industrial Bank* v. *British Bank for Foreign Trade*, 90 L. J., K. B. (N. S.) 1089, 19 A. L. R. 1106, it is held that the question involved "must be a real and not a theoretical question; the person raising it must have a real interest to raise it; he must be able to secure the proper contradicter, that is to say, some one presently existing who has a true interest to oppose the declaration sought."

In England, the declaratory judgment statute was first enacted in 1850. It was last amended in 1883, and subsequently incorporated in the laws of Australia and Canada. Statutes authorizing the entry of declaratory judgments and decrees have been passed by the legislatures of California, Connecticut, Florida, Hawaii, Kansas, Kentucky, Michigan, New Jersey, New York, Rhode Island, Virginia and Wisconsin. There is as yet no Federal statute authorizing such judgments and decrees. Freeman on Judgments (5th ed.), section 1354.

The constitutionality of these statutes has been considered by the courts of several States, and sustained in each instance, except in Michigan.

It was held by a divided court in *Anway* v. *Grand*

*Rapids R. Co.*, 211 Mich. 592, 179 N. W. 350, 12 A. L. R. 26, that the Michigan statute is unconstitutional, because it authorizes the courts to make binding declarations of rights where no judicial controversy is involved and thereby requires the performance of nonjudicial acts, in violation of the clause of the Constitution which vests judicial power in the courts. Unlike the Virginia statute, the Michigan act did not limit the operation of the statute to cases of "actual controversy" and "actual antagonistic assertion and denial of right." This case is, therefore, not controlling here.

The Kansas statute (Lanes 1921, C. 168), the first and sixth sections of which are in the identical language of sections one and eight of the Virginia act, was declared, in *Kansas ex rel. Richard J. Hopkins, Attorney General,* v. *Grove,* 109 Kan. 619, 201 P. 82, 19 A. L. R. 1116, to be constitutional, the court holding that the act did not attempt to confer on the courts nonjudicial powers.

The California statute is in all material respects like the Kansas act. The court held in *Blakeslee* v. *Wilson,* 190 Cal. 479, 213 P. 495, that the act does not impose upon the courts nonjudicial duties and is not unconstitutional.

The Connecticut and New York statutes are in all respects similar. The constitutionality of the New York act was upheld in *Board of Education of City of Rochester* v. *Van Zandt,* 119 Misc. Rep. 124, 195 N. Y. Supp. 297. The Connecticut statute was sustained in *Braman* v. *Babcock,* 98 Conn. 549, 120 A. 150.

For a review of the various statutes authorizing the entry of declaratory judgments and decrees, see Harvard Law Review, Vol. 34, p. 697; Virginia Law Review, Vol. 9, p. 167.

For a discussion of declaratory judgments, see annotation 19 A. L. R. p. 1124.

[5] Construing the act liberally, it is clear that the complainants have the right to maintain their bill. To hold that the purchasers cannot avail themselves of the statute and have their rights adjudicated and settled, until such time as the infant defendants might see fit to sue to recover possession of the lots, would be to defeat the object and purpose of the act.

In *Schmelz* v. *Quinn*, 134 Va. 78, 113 S. E. 845, the court, at the request of counsel on both sides, decided what commission a trustee was entitled to receive when appointed commissioner to make sale of the land, although the ruling of the lower court was in favor of the appellant, saying the ruling was possibly warranted by the declaratory judgments act.

In *Craig-Giles Co.* v. *Epling*, 135 Va. 74, 115 S. E. 534, the defendant demurred to and answered the complainants' bill, and the lower court sustained the demurrer and dismissed the bill. On appeal, at the request of both parties, this court treated the demurrer as overruled and proceeded to dispose of the case on its merits, "feeling warranted in so doing in view of the declaratory judgments act."

The allegations of fact contained in the bill are fully supported by the evidence, and it is now conceded that the executors had no authority under the will to sell any of the testator's real estate.

[6] Floyd A. Patterson, acquiescing in the opinion of the executors, honestly entertained by them, that they had the right to sell the real estate, was present at a public sale of the lots which were devised to him and Verdie P. Weast and encouraged those present to bid on them. He saw the purchasers buy the lots and take possession of them and subsequently re-

ceipted to the executors for his portion of the purchase money. Such action on his part constituted ratification and is conclusive on all who claim under him. The purchasers are now and were at the time of his death in possession of the lots. Had any question been raised as to the title to the lots in his life time, he would have been estopped by his conduct from contesting the title of the purchasers and compelled, in a proper proceeding, to carry out the purchases. At his death the purchasers were the equitable owners of the property, and he, having died intestate, the legal title was vested in his three children as his only heirs at law. Not occupying any higher position than their father, they now hold their father's interest in the lots in trust for the purchasers thereof, and are likewise estopped from questioning the title of the purchasers.

[7] "Constructive trusts have been said to arise through the application of the doctrine of estoppel, or under the broad doctrine that equity regards and treats as done what in good conscience ought to be done. * * * Their forms and varieties are practically without limit, being raised by courts of equity whenever it becomes necessary to prevent a failure of justice." 39 Cyc. 169-170, and cases cited.

In *Camp Mfg. Co.* v. *Green*, 129 Va. 360, 106 S. E. 394, where the executor, without authority, sold and conveyed the testator's real estate, this court held that if true that the party under whom the appellees claimed had received her share of the proceeds of sale, "such action on her part was not mere silence, but express ratification which was conclusive against all who claimed under her."

[8] "Where the true owner of property, for however short a time, holds out another, or, with knowledge

of his own right, allows another to appear as the owner of, or as having full power of disposition over the property, the same being in the latter's possession, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. * * * The rule applies to heirs who assent to and encourage the sale of land by an executor who has no authority under the will to make such a sale." Bigelow on Estoppel, pages 607, 608.

"If a man knowingly, though passively, by looking on suffer another to purchase land for valuable consideration, under an erroneous impression of title, without making known his claim, he will not be permitted thereafter to exercise his legal right against such person." *Idem*, page 651.

For the foregoing reasons, we are of the opinion that the decree under review is erroneous, and the same will be reversed.

The facts before us being such as to enable the court to attain the ends of justice, we will enter here the decree which the circuit court should have entered, adjudging that the legal title to the undivided one-half interest of Floyd A. Patterson, deceased, in the lots mentioned in complainants' bill, which was devised to him by his father, William C. Patterson, deceased, is held by the infant defendants in trust for the purchasers of said lots; that the infants are estopped from claiming the lots through their father, and appointing a commissioner who shall convey the said undivided one-half interest in the lots to the purchasers, as follows: To Verdie P. Weast, lots 5, 6, 7, 8, 9, 10 and 11 in block 56; to J. S. Pirkey, lots 21 and 22 in block 30; and to J. E. Utsler, lot 32 in block 57 and lot 7 in block 2, as they appear upon the plat of the town of

Grottoes, by good and sufficient deeds with special warranty, permitting Edith Patterson to unite in said deeds, and report to the Circuit Court of Rockingham county.

*Reversed and final decree.*