Constance R. JOHNSON, Plaintiff,

v.

Joseph V. GARTLAN, Jr., et al.,
Defendants.

Civ. A. No. 330–69–A.

United States District Court,
E. D. Virginia,
Alexandria Division.

Nov. 4, 1971.

Mark P. Friedlander, Jr., Arlington, Va., for plaintiff.

Carrington Williams, Fairfax, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

**OREN R. LEWIS, District Judge.**

The plaintiff, the sole heir of the late James N. Johnson, brings this suit to quiet title to land taken from him by a federal tax sale.

The land in question is now titled in the name of the defendants, having been transferred to them by the assignee of the purchasers at the tax sale by special warranty deed dated March 27, 1967, recorded February 7, 1968.

The plaintiff claims the tax sale in question was not conducted in accord with the requisite federal statutes—The defendants say the sale was legal and proper in every respect—They also question the right of the plaintiff to bring this suit and seek dismissal on the ground of laches.

■ This is a diversity action involving more than $10,000.00—The plaintiff is the sole heir of the landowner—As such she has standing to question the validity of the tax sale in question.

■ This suit was filed October 3, 1969. The tax deed to Frank A. Hoss, Jr., assignee of the purchasers, was recorded among the land records of Prince William County, Virginia, on December 31, 1965—The late landowner, James N. Johnson, died April 1, 1967. The plaintiff reached her twenty-first birthday on March 28, 1968—She did not sleep on her rights—This suit was timely filed.

■ Whether the sale and transfer of this land was valid depends upon whether or not the Internal Revenue Service fully complied with §§ 6335 and 6337–6339 of Title 26 of the United States Code.

From the record here made, the Court finds that in 1962 the late James N. Johnson was a retired small restaurant owner and taxicab driver—He then lived at 742 Ingraham Street, Washington, D. C.—His business address was RFD 6, Box 402, Alexandria, Virginia, c/o John Gillis—He then owned some 172 acres of unimproved scrub pineland in Prince William County, Virginia—Judgments in the amount of some $4,500.00 were recorded against him in Prince William County—He then owed the federal government $486.15 for 1958 federal income taxes—Internal Revenue was having difficulty in collecting this money—It filed a federal tax lien for $586.15 in Prince William County on August 1, 1962.

The record of seizure and sale of real estate (IRS Form A–24) recites the land was seized October 26, 1962—that notice of seizure was mailed to the owner on that day—and that notice of sale was mailed to him on November 8, 1962—Although this form lists the taxpayer's Washington and Alexandria addresses, there is nothing on the form indicating where these notices were mailed.

The notice of sealed bid sale describes the property by metes and bounds and states the property will be sold in accordance with the provisions of § 6335 of the Internal Revenue Code at public sale under sealed bids which will be opened on December 3, 1962 at ten o'clock a. m. at 701 Prince Street, second floor, Room 201, Alexandria, Virginia—that only the right, title and interest of James N. Johnson in and to the property is offered for sale—that the bids must be submitted directly to Albert C. Nagle, Revenue Officer, 701 Prince Street, Alexandria, Virginia, prior to the time set

for the opening of bids—and that twenty per cent of the bid or $200.00, whichever is greater, must be submitted with the bid, the balance of the purchase price to be paid on or before January 3, 1963.

The sale was advertised in the Journal Messenger, a Prince William County newspaper, on November 8, 1962.

G. P. Manderfield of Manassas, Virginia, submitted a sealed bid of $16,825.-38 for himself and others—He was given a certificate of sale for the property on January 2, 1963. He assigned the certificate of sale to Frank A. Hoss, Jr., trustee—A deed to the land in question was given to him by the Director of Internal Revenue Service, Richmond District, on February 14, 1964—This deed was recorded in Prince William County on December 31, 1965.

The defendants are the daughter and son-in-law of G. P. Manderfield—He gave them his interest in this land and made arrangements for their buying out his partners for a $32,000.00 note—payable interest only for five years.

The defendants attempted to secure title insurance on this property, without success, due to infirmities in the tax sale—They have paid the real estate taxes on the land but have not paid the judgment liens which were recorded against this land prior to the date of the federal tax sale.

Someone in the Alexandria Internal Revenue office (the copy of the letter is unsigned) mailed James N. Johnson a letter dated January 7, 1963, addressed to him at Manassas, Virginia, returning his money order for $100.00 which he had previously sent them as a payment on his then delinquent income taxes— They told him in the letter that his tax liability had been satisfied by the sale of his real estate in Prince William County and that he had the privilege of redeeming his property within a year from the date of sale upon paying the buyer the purchase price plus twenty per cent interest for his venture.

Internal Revenue mailed Mr. Johnson at his Washington address a United States Treasury check in the amount of $13,636.35 dated October 30, 1964. There is nothing on this check indicating what it was for, or a covering letter stating what the money was for.

The $586.15 federal tax lien was released by the District Director and recorded among the land records of Prince William County on June 25, 1964.

█ Laws permitting the sale of a man's land must be strictly construed— Chief Justice Marshall so stated many years ago when he said

"That no individual or public officer can sell, and convey a good title to, the land of another, unless authorized so to do by express law, is one of those self-evident propositions to which the mind assents, without hesitation; and that the person invested with such a power must pursue with precision the course prescribed by law, or his act is invalid, is a principle which has been repeatedly recognized in this court." Thatcher v. Powell, 6 Wheat. 119, 5 L.Ed. 221.

The Fourth Circuit has gone even further. In United States v. Heffner, 420 F.2d 809 (1969), Judge Winter declared

"An agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down."

█ Further, the burden of showing literal compliance with statutes governing the sale of land for taxes is upon the claimant under the tax sale. See McAndrews v. Belknap, 141 F.2d 111 (6th Cir. 1944).

The claimant here has not carried that burden.

Internal Revenue in making this sale has not complied with the requirements

of § 6335(a) [1] or with the requirements of § 6335(d). [2]

This sale from the beginning to the end was handled by Revenue Officer Albert C. Nagle of the Alexandria office. He says he discussed the collection with his supervisor and that he was authorized to go ahead with the sale—that if it did not comply with the statute it was his fault—He says he made the seizure and that he alone made the decision to sell the land by sealed bid—and to make the sale outside the county where the land is located—It was winter and he thought it would be more convenient to receive the bids in his Alexandria office —He further stated that he never gave a thought to selling a portion of the land —He said he did not have any means of dividing it—and as far as he knew, the Internal Revenue Service always sold real estate as a whole unless it was recorded in lots or parcels. He further says he knew this land would bring considerably more than the amount due for expenses of sale and the delinquent taxes—He also stated he personally prepared the newspaper ad, the notice of levy [3] and the notice of sale by sealed bid (IRS Form 2434), which he considered to be the notice of seizure—He says he mailed a copy of IRS Form 2434 to the landowner and sent the ad to the Journal Messenger in Manassas for publication—He did not go on the land or post it. He further stated that he was not personally present in Alexandria on December 3, 1962 when the sealed bids were opened.

Revenue Officer Nagle says he relied on Delegation Order No. 97 and TM 5300–10 of the Internal Revenue Manual as his authority for fixing the place of sale outside the county where the land is located.

That delegation order did not authorize a revenue officer to fix the place of sale outside of the county—It only delegated authority to place advertising orders with newspapers or other similar types of commercial advertising media in cases involving seizure and sale.

TM 5300–10 does provide "the notice of sale designating such place shall be considered to be the order made by the District Director that the sale be held in such other place." That regulation, however, does not make the recitals in the notice of sale a verity—At best they are only prima facie evidence of the purported facts stated therein. Here the direct evidence of the revenue officer who handled this sale is to the contrary —He admits that he alone made the decision requiring the sealed bids to be sent or brought to the Internal Revenue office in Alexandria—He says he did not even discuss it with the Director.

Clearly § 6335(d) provides that the place of sale shall be within the county in which the property is seized, except by special order of the Secretary or his delegate. No such special order was here given, and the Court so finds.

The Court further finds that the sealed bids were received and opened at 701 Prince Street, Alexandria, Virginia, and the tax deed was issued in Richmond, Virginia, neither of which is within Prince William County, the place where the land in question is located.

1. "(a) Notice of seizure.—As soon as practicable after seizure of property, notice in writing shall be given by the Secretary or his delegate to the owner of the property * * * or shall be left at his usual place of abode or business if he has such within the internal revenue district where the seizure is made. If the owner cannot be readily located, or has no dwelling or place of business within such district, the notice may be mailed to his last known address. Such notice shall specify the sum demanded and shall contain, * * * in the case of real property, a description with reasonable certainty of the property seized."

2. "(d) * * * The place of sale shall be within the county in which the property is seized, except by special order of the Secretary or his delegate."

3. The notice of levy was signed by his supervisor as he had no authority to make a levy.

The Court further finds that neither the seizure nor the notice of seizure were made or given to the landowner as required by the express provisions of § 6335(a)—Nothing whatsoever was done to seize this land except to record the levy for unpaid taxes in Prince William County. Whether that alone—there was no posting or going upon the land—is sufficient for a legal seizure of land is debatable to say the least—This, however, need not be decided here because there is no evidence that a notice of seizure as required by statute was ever given to the landowner or left at his usual place of business—except the recital on IRS Form A–24. That form says a notice of seizure was mailed to the landowner on October 26, 1962— This is only prima facie evidence.

The revenue officer says he only made out and mailed one form to the owner, IRS Form 2434—the "Notice of Sealed Bid Sale"—He considered this form a notice of seizure. The record of seizure and sale form says IRS 2434 was mailed to the owner on a different date, namely, November 8, 1962. It is not stated to which address these notices were mailed.

Section 6335(a) expressly provides that the notice of seizure shall be given to the owner of the property or shall be left at his usual place of abode if he has such within the internal revenue district—Neither was done here—One might argue that mailing the notices constitutes "giving" or "leaving"— However, this statute expressly states that the notice of seizure may be mailed to the landowner's last known address only if the owner cannot be readily located or has no place of business within such district—There is no evidence in this case that this landowner could not be readily located—The internal revenue officer knew where the taxpayer lived and that his business address in the district was RFD 6, Box 402, Alexandria, c/o John Gillis.

Further, the revenue officer who handled this sale says that he considered IRS Form 2434 (Notice of Sale by Sealed Bid) as the notice of seizure and that this is the form he sent to the landowner.

Even if this form were received, it is no substitute for a § 6335(a) notice of seizure for the simple reason that the notice of seizure required by that section of the Code requires that such notice "shall specify the sum demanded and shall contain * * * in the case of real property, a description with reasonable certainty of the property seized." The amount demanded is not disclosed on IRS Form 2434.

Clearly the requirements of § 6335(a) of Title 26 of the United States Code were not fully complied with in this case, and the Court so finds.

The delinquent income taxes in this case, including interest, amounted to $586.15—The land purportedly seized encompassed some 172 acres of unimproved scrub pineland, much of which fronted on public roads. The revenue officer knew that this land was worth much more than the back taxes and the costs of sale. All of the realty experts who testified in this case said the land was worth somewhere between thirty and fifty thousand dollars—The only liens against this land at the time of sale were some $4,500.00 judgment liens —The purchaser at the tax sale must have valued the land at $64,000.00 when he gave his one-half interest to his daughter and son-in-law in 1964—(He bought a half interest for $32,000.00.)

Yet the revenue officer admitted he never at any time considered selling only a part of this land to collect the back taxes—He made the decision to sell all of it without even discussing the matter with his superiors.

It is rather hard to read § 6335(c) [4] of the Internal Revenue Code as permitting the sale of the whole if the real es-

4. "(c) * * * If any property liable to levy is not divisible, so as to enable the Secretary or his delegate by sale of a part thereof to raise the whole amount of the tax and expenses, the whole of such property shall be sold."

tate is divisible and the sale of a part will raise the whole amount of the taxes and expenses—Clearly this land was divisible—It was unimproved scrub pineland—A sale of a few acres—ten or twenty at best—would have brought more than enough to pay the approximately $600.00 due in back taxes and expenses.

" * * * [T]he Supreme Court has declared that when it does not affirmatively appear in a sale of the entire land that no one would bid the amount of the taxes and costs for less than the whole, or that the land was incapable of division, the sale is invalid." See McAndrews v. Belknap, supra.

No such showing has here been made. ■ Further, although § 6337(b) [5] does not require that notice of the right of redemption be sent to the landowner, if Internal Revenue takes it upon itself to give such notice—as it here says it did—the notice should properly advise the landowner in the premises. Here it told the taxpayer he could redeem within one year from the date of the sale but it neglected to give him the date from which the time began to run—It told him he could redeem his land by paying the buyer the bid price plus twenty per cent for his venture but it neglected to give him the name of the buyer or the bid price.

Further, by selling all of Mr. Johnson's land and by retaining the surplus for almost a year after his right to redeem had expired, the Internal Revenue Service not only impaired this man's statutory right to redeem—for all practical purposes it made it impossible for him to so do. See McAndrews v. Belknap, supra.

■ The defendants' claim that the plaintiff is estopped from questioning the validity of the sale because her late father ratified the sale when he accepted the proceeds of sale is not supported by the record.

Accepting a check from the Government, under the circumstances here shown, standing alone is not enough.

"The authorities are agreed that where one relies on estoppel in pais, the burden is on him to prove the essentials of such an estoppel by clear, precise and unequivocal evidence. The evidence must not leave the matter to mere inference or conjecture. It must be certain in every particular." Trayer v. Bristol Parking, 198 Va. 595, 95 S.E.2d 224 (1956).

The cases relied upon by the defendants are factually different—In Camp Mfg. Co. v. Green, 129 Va. 360, 106 S.E. 394, the court found express ratification of the sale—In Patterson's Ex'rs v. Patterson, 144 Va. 113, 131 S.E. 217, the heir attended the sale, saw the land sold and receipted to the executors for his portion of the purchase money—In Hiatt v. Tompkins, 176 Va. 82, 10 S.E.2d 489, the owners consented to a private sale and accepted part of the proceeds of sale.

There was no evidence in this case indicating that James N. Johnson either consented to or attended the sale of his land or that he receipted for any of the proceeds of sale—In fact it is rather doubtful that he even knew that his land was sold—The revenue officer says he mailed him a copy of the notice of sealed bid sale—He did not say where he mailed the notice—If the landowner received this notice he obviously did not know what it meant—he could read and write but had a very limited education —because he sent the Internal Revenue Service a hundred dollar payment on his

---

5. "(b) Redemption of real estate after sale.—
"(1) * * * The owners of any real property sold as provided in section 6335, their heirs * * * or any person having any interest therein, * * * or any person in their behalf, shall be permitted to redeem the property sold, or any particular tract of such property, at any time within [at the time of this sale—one year] after the sale thereof. * * *
"(2) * * * upon payment to the purchaser * * * the amount paid by such purchaser and interest thereon at the rate of 20 percent per annum."

**444**

back taxes either shortly before or after the time his land was advertised for sale.

The defendants rely heavily on the IRS letter of January 7, 1963 to Mr. Johnson from someone in Internal Revenue who returned his $100.00 money order and told him his land had been sold —This letter at best, if it had been received—it was mailed to Manassas, not to the landowner's Washington or Alexandria address listed on his tax return —would only show that Mr. Johnson learned of the sale after the fact—It does not establish ratification.

■ To ratify, one must have full knowledge of his rights and of all the material facts—Johnson was never told who bought his land or what it was sold for—He did not receive the surplus until long after his right of redemption had expired.

Clearly the evidence of estoppel here presented is far from being clear, precise and unequivocal.

This is a suit in equity. The plaintiff has tendered the bid price plus the costs of the sale, together with interest—The defendants want the present fair market value of the land and nothing less.

Although the defendants have obligated themselves on a $32,000.00 note given to one of the original buyers at the tax sale and have paid some $6,630.74 in real estate taxes—they are not innocent purchasers, solely relying on the recital set out in the Director's tax deed—One of them is a lawyer—The principal buyer at the tax sale was his father-in-law —He had actual knowledge of the alleged infirmities in the tax sale—He was so informed by the title insurance company when he applied for title insurance.

■ Whether the defendants' obligation on the $32,000.00 note is enforcible is not before this Court for determination—but a buyer of real property at a tax sale can transfer no better title than he has.

The tax sale is not only invalid—not being in accord with the requisite federal statutes—it shocks the conscience of the Court.

Clearly the Internal Revenue Service has the duty of collecting all taxes due the federal government—but it had neither the duty nor legal authority to sell this man's undivided land—some 172 acres—under the conditions and circumstances here revealed—to collect some $586.15 in back income taxes.

The tax sale and the tax deed will be declared invalid and held for naught, and the Court will grant the plaintiff's prayer to quiet title upon her paying the defendants the bid price, plus the costs of sale and real estate taxes paid, together with six per cent interest per annum, within thirty days from the date hereof; and

It is so ordered.