ALBERT·R. BRAMAN (MILDRED E. ELLIS, ADMINISTRA-
TRIX, SUBSTITUTED PLAINTIFF) *vs.* MATTIE P.
BABCOCK, EXECUTRIX, ET AL.

* First Judicial District, Hartford, January Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

Chapter 258 of the Public Acts of 1921 (p. 3243), commonly known as
the Declaratory-Judgment Act, is not unconstitutional as an at-
tempt to confer nonjudicial powers upon the Superior Court.
The purpose of the Act is merely to extend the novel judicial pro-
cedure, first authorized in our practice in 1893, in actions to settle
the title to real estate, to any action or proceeding seeking the es-
tablishment of "rights or other legal relations," irrespective of any
claim for further relief; and this purpose is accomplished by em-
powering the Superior Court "to declare" such rights or relations,
and giving the declaration so made the force of a final judgment.
The statute undoubtedly enlarges our methods of remedial jus-
tice, but the enactment of such legislation is fully within the con-
stitutional powers of the General Assembly.
The rules made by the judges of the Superior Court, pursuant to the
authority conferred upon them by the Act, accord with and effectu-
ate its purpose and intent.
The judicial power is not specifically limited by the Constitution of this
State to "cases and controversies," as it is by the Federal Con-
stitution.
The question of the construction or interpretation of the will of a Con-
necticut testator, for the sole purpose of determining whether one
or more of the litigants has an interest in land in another State, is
one that can be effectually determined only by the courts of the
latter State; and therefore a suit seeking a declaratory judgment to
settle such alleged right, cannot be sustained in the courts of this
State under the provisions of the Act of 1921.
A Connecticut testator devised land in Rhode Island to several persons
by name, including among them one "........ Braman." *Held*
that the question whether Albert R. Braman was the devisee in-
tended by ........ Braman, was one of construction, which the
courts of Rhode Island alone could effectually determine.

Submitted on briefs January 10th—decided March 1st, 1923.

SUIT to obtain a declaratory judgment establishing

* Transferred from second judicial district.

the rights of the plaintiff and certain of the defendants, under the will of a Connecticut testator, to certain real estate in Rhode Island, brought to and tried by the Superior Court in New London County, *Avery, J.*, upon a demurrer to the complaint; the court sustained the demurrer and thereafter judgment was rendered (*Webb, J.*) for the defendant Eliza Merritt, from which the plaintiff appealed. *No error.*

*Arthur T. Keefe*, for the appellant (plaintiff).

*Hadlai A. Hull, Frank L. McGuire* and *Charles Hadlai Hull*, for the appellee (defendant Eliza Merritt).

CURTIS, J. The complaint alleges that Peleg S. Barber of Stonington, Connecticut, died in 1901, leaving a will which was duly admitted to probate in the Court of Probate for the district of Stonington. Mattie P. Babcock was named therein as executrix and trustee, and duly qualified as such in 1901.

Section 23 of this will is as follows: "I give and bequeath to my granddaughter Mattie P. Babcock the income or rent of the buildings now standing on High Street in the Town of Westerly, Nos. 38, 40, 42, 44, 46 and known as the Barber Memorial Building during her natural life; she is to keep the buildings in good repair and keep them insured, pay all taxes as they become due and at her death, if she should leave any issues, the said building to be given to them, their heirs and assigns. It would be my wish that the name of said building should never be changed. And I now appoint Mattie P. Babcock Trustee of said building during her natural life without bonds, and if the said Mattie P. Babcock should not leave any issues, then the said building shall be divided between Eliza Merritt, Phebe Barber, Charles H. Brahman, George Bra-

man, Grace M. Barber, ......Braman and Josephine
Minzey. All the rest and residue of my estate I give
to my granddaughter Mattie P. Babcock."

The plaintiff seeks in this action to have the court
declare that he was the blank..........Braman
mentioned in this section of the will, with such rights
to property in Westerly, Rhode Island, as were con-
ferred upon..........Braman by the terms of § 23
of the will.

The defendant Eliza Merritt demurred to the com-
plaint upon the following grounds:—

"1. The facts alleged in said complaint are not
sufficient to support a proceeding under Chapter 258
of the Public Acts of 1921, and do not state a cause of
action within the scope of said Chapter. 2. It appears
from the complaint that the subject-matter of said
cause is situated in Westerly, State of Rhode Island.
3. The plaintiff has an adequate remedy for relief, if
he be entitled to any on the facts stated, other than
by a proceeding under said chapter of said Public Acts
hereinbefore referred to. 4. A proceeding under Chap-
ter 258 of the Public Acts of 1921 is not an appropriate
proceeding for the construction of the will referred to
in said complaint. 5. Chapter 258 of the Public Acts of
1921 is in violation of the Constitution of this State,
because it attempts to confer upon the court powers
not judicial and requires the performance of acts not
judicial in character."

The fifth ground of demurrer, that the Declaratory
Judgment Act, Chapter 258 of the Public Acts of 1921,
is unconstitutional, if sustained, bars the further prose-
cution of this action, and should properly be first con-
sidered.

The basis of this claim is that the statute imposes
upon the court the duty of performing nonjudicial
functions. Our statute, Chapter 258 of the Public

Braman *v.* Babcock.

Acts of 1921, is as follows: "Section 1. The Superior Court shall have power in any action or proceeding to declare rights and other legal relations on request for such declaration whether or not further relief is or could be claimed, and such declaration shall have the force of a final judgment. Sec. 2. The judges of the Superior Court shall make such orders and rules as they may deem necessary and proper to carry into effect the provisions of this Act." In accord with § 2, the judges of the Superior Court have made rules to carry the Act into effect, which are found in the Practice Book (Ed. of 1922) p. 255. These rules are set forth in a footnote.

---

Sec. 62. The Superior Court will, in cases not herein excepted, render declaratory judgments as to the existence or nonexistence (a) of any right, power, privilege or immunity; or (b) of any fact upon which the existence or nonexistence of such right, power, privilege or immunity does or may depend, whether such right, power, privilege or immunity now exists or will arise in the future. Sec. 63. The Superior Court will not render declaratory judgments: (a) Upon the complaint of any person unless he has an interest legal or equitable by reason of danger of loss or of uncertainty as to his rights or other jural relations; (b) or unless there is an actual *bona fide* and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties; (c) or where the court shall be of the opinion that the parties should be left to seek redress by some other form of procedure; (d) or unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof.    Sec. 64.   Procedure in actions making a declaratory judgment shall be as follows: (a) The form and practice prescribed for civil actions shall be followed.   (b) The prayer for relief shall state with precision the declaratory judgment desired and no claim for consequential relief need be made.   (c) Actions claiming coercive relief may also be accompanied by a claim for a declaratory judgment, either as an alternative remedy or as an independent remedy.   (d) Subject to the provisions of Sec. 5636 of the General Statutes, causes of action for other relief may be joined in complaints seeking declaratory judgments.     (e) The defendant in any appropriate action may seek a declaratory judgment by a cross-complaint.   (f) Issues of fact necessary to the determination of the cause may be submitted to the jury as in other actions. Sec. 65. Costs shall be discretionary and may be granted to or against any party to the action.   Sec. 66. The decision of the

The function that the statute imposes upon the court is to "declare rights and other legal relations" between proper parties, and it provides that "such declaration shall have the force of a final judgment." The Act provides that "the judges of the Superior Court shall make such orders and rules as they deem necessary and proper to carry into effect the provisions of this Act." As shown above, the judges of the Superior Court have made such rules. Such rules cannot alter the Act, they can only give effect to its real purpose. *Dunnett* v. *Thornton,* 73 Conn 1, 6, 46 Atl. 158. We therefore turn to the rules to see if they are in accord with the real purpose of the Act. We find that these rules are in accord with the real purpose of the Act and correctly indicate its purpose, which is for the Superior Court to render final judgments as to the existence or nonexistence of any right, power, privilege or immunity, or of any fact upon which the existence or nonexistence of such right, power, privilege or immunity may depend, whether the same now exists or will arise in the future. It is also the purpose of the Act, that the party seeking such a judgment must have an interest legal or equitable by reason of danger of loss or of uncertainty as to his rights or other jural relations, and that there be an actual, bona fide and substantial question or issue in dispute, or substantial uncertainty of legal relations which requires settlement between the parties; that all persons having an interest in the subject-matter of the complaint are parties to the proceeding or have reasonable notice, and that the court be of the opinion that the parties should not be left to seek redress in some other form of procedure; that issues of fact may be submitted to the jury, and

court shall be final between the parties to the action as to the question or issue determined, and shall be subject to review by appeal as in other causes.

that the decision of the court shall be final, and subject to review by appeal.

The Superior Court upon a complaint seeking a declaratory judgment is therefore, under the Act, dealing with an actual, bona fide and substantial question or issue in dispute, or substantial uncertainty of legal relations as to any right, power, privilege, or immunity, whether such now exists or will arise in the future, which requires settlement between the persons in interest, who are all parties to the proceeding or all in interest who have reasonable notice of it, and the court has power to render a final judgment subject to appeal.

The Connecticut Constitution does not in terms limit the exercise of judicial power to "cases and controversies" as is done in the Constitution of the United States. This limitation results in a possible narrowing of judicial power by the definition given to the term "cases and controversies." *Muskrat* v. *United States*, 219 U. S. 346, 31 Sup. Ct. 250. In dealing with another statute (now General Statutes, § 5113) entitled "Action to settle title to land," in the case of *Dawson* v. *Orange* (1905), 78 Conn. 96, 61 Atl. 101, we held that this statute was constitutional although it authorized any person claiming an interest in real estate or personal property to bring suit against any person or persons claiming an adverse interest for the purpose of determining such adverse interest and to settle the title to the property. We there said (p. 100) : "A claim may be adverse, within the meaning of the statute, although no attempt has been made to enforce it," and that "to set it up [that is, to make the claim] is treated as of itself a sufficient injury to justify a suit"; that the statute "introduced . . . a novel mode of judicial procedure, but it was fully in the power of the General Assembly thus to enlarge our methods of remedial

justice." This statute was in substance an Act authorizing a declaratory judgment in relation to one class of rights, although no attempt was being made to enforce an adverse claim as to such rights. In that case we held that a statute was constitutional which entitled one to proceed in a civil action to have a dispute or uncertainty as to his legal relations as to a right in real or personal property determined by a judgment settling his rights to such property, although no attempt was being made to enforce an adverse claim. See also *Miles* v. *Strong*, 68 Conn. 273, 36 Atl. 55.

We have thus had before us as to one class of rights the question whether the General Assembly could, under our Constitution, authorize the courts to employ a novel mode of judicial procedure to settle the title to property, when an adverse claim was made as to it, although no attempt had been made to enforce such claim, the novel mode of procedure being one, in substance, authorizing a declaratory judgment. We then held that the General Assembly could so enlarge our methods of remedial justice. Later, in 1917, in *Ackerman* v. *Union & New Haven Trust Co.*, 91 Conn. 500, 100 Atl. 22, in reference to a claim that in that action the courts should of their own accord without statutory authority render declaratory judgments, we said: "Our courts have carefully avoided encroachments upon the functions of the legislature. . . . Neither new remedies, nor the extension or curtailment of existing ones have been attempted by the rules [of court]. . . . If the courts are to exercise broader powers in this respect, the enlargement of their authority should come from legislative sanction. . . ." We there by implication recognized the principle underlying the decision of *Dawson* v. *Orange*, 78 Conn. 96, 61 Atl. 101, to the effect that the General Assembly could under our Constitution enlarge our methods of

remedial justice by authorizing our courts to protect rights by the rendering of declaratory judgments.

We have held, in substance, in the instances cited, that under our Constitution the General Assembly can authorize our courts to render a declaratory judgment as a "novel method of judicial procedure . . . enlarging our methods of remedial justice." It therefore follows by necessary implication that the Act in question is valid, inasmuch as it merely still further enlarges our methods of remedial justice by authorizing the extension of the novel method of judicial procedure by way of declaratory judgments, to all rights and legal relations.

The fact that the statute involved here speaks in terms of a "declaratory judgment," does not so distinguish it from the statute as to settling the title to real or personal property as to require an application of different principles to support it.

We held in *Norwalk Street Ry. Co.'s Appeal*, 69 Conn. 576, 37 Atl. 1080, 38 id. 708, that our Constitution divided the powers of government into three distinct departments: the legislative, the executive, and the judicial; each one of which is confided to a separate magistracy, and that the General Assembly could not authorize the courts of this State to exercise powers which were essentially and distinctively legislative or executive.

Turning to the function or duty imposed by our Declaratory Judgment Act upon the Superior Court as set forth above, could it be claimed with any pretense of reason, that the function was legislative or executive? The answer is obvious. We must, then, conclude that the function is judicial, or that it falls outside of the three functions described as legislative, executive, or judicial. It would be a travesty to hold that this method of remedial justice could find no place

in our system of government unless a place was made for it by an amendment to the Constitution. Such, of course, is not the fact, as the case of *Dawson* v. *Orange,* 78 Conn. 96, 61 Atl. 101, discloses. We are not, therefore, required to hold that under our Constitution the General Assembly is forbidden to enlarge our customary method of remedial justice by authorizing the novel mode of judicial procedure of permitting courts to render declaratory judgments, and thus to close the door to the use in this State of a method of judicial procedure which, for more than a half century, has been used to the great benefit of the commonwealth and people by those using kindred methods of jurisprudence as in Great Britain. To hold that the judicial power of this State is confined to the consideration of cases where consequential relief only is sought, would be enforcing a limitation upon the judicial power in accord with custom rather than with reason and logic. Under the Kansas Act it was held that rendering a declaratory judgment might be a judicial act, although rendered in actions admittedly brought before a right had been invaded, and although no consequential relief was given or sought. *State ex rel. Hopkins* v. *Grove,* 109 Kan. 619, 201 Pac. 82, 19 A. L. R. 1116.

We hold that in this State the constitutionality of a statute of this character has been established and is in substance *res judicata,* yet we have deemed it advisable to examine cases in other jurisdictions dealing with this subject, to determine whether we should reconsider such conclusion. We have examined *Anway* v. *Grand Rapids Ry. Co.,* 217 Mich. 592, 179 N. W. 350, 12 A. L. R. 26, and *State ex rel. Hopkins* v. *Grove,* 109 Kan. 619, 201 Pac. 82, 19 A. L. R. 1116. As a result of this examination, we are confirmed in our opinion as expressed in *Dawson* v. *Orange,* 78 Conn. 96,

61 Atl. 101, and are satisfied that although this Act, as did the Act considered in that case, provides a novel mode of judicial procedure, yet the General Assembly had full power to enlarge our method of remedial justice by providing such a novel mode of procedure. The demurrer alleging that the declaratory Act is unconstitutional was properly overruled.

We will now turn to the other grounds of the demurrer. The first ground alleges as follows: " 1. The facts alleged in said complaint are not sufficient to support a proceeding under Chapter 258 of the Public Acts of 1921, and do not state a cause of action within the scope of said Chapter." It appears by the complaint that the Court of Probate of Stonington in July, 1903, decreed that Albert R. Braman is the blank . . . . . . Braman referred to in § 23 of said will. It is further alleged that the blank . . . . . . Braman referred to in § 23 of the will of Peleg S. Barber was intended by the testator to be, was, and is, the plaintiff, Albert R. Braman, a nephew of said Peleg S. Barber. It appears from the complaint that the determination of who was meant by the blank . . . . . . . . Braman referred to in § 23 of this will, is not sought in order to enable courts of Connecticut to administer any personal estate of the testator, or any real estate located in Connecticut. The determination of this question under the complaint is only sought as it relates to an interest in real estate located in Rhode Island. The question presented is one of the construction or interpretation of a will relevant only to determine whether the plaintiff has any interest in certain land in Rhode Island. "It is a principle firmly established that to the law of the State in which the land is situated we must look for the rules which govern its descent, alienation and transfer, and for the effect and construction of wills and other conveyances," in so far as they relate to the transfer of

land. *De Vaughn* v. *Hutchison,* 165 U. S. 566, 570, 17
Sup. Ct. 461; *Clarke* v. *Clarke,* 178 U. S. 186, 20 Sup.
Ct. 873. In *Clark's Appeal,* 70 Conn. 195, 39 Atl. 115, it
appears that a testatrix domiciled in South Carolina
left real estate in South Carolina and also in Con-
necticut, and after the probate of the will in South
Carolina in a proper action the courts of that State
construed a certain clause of the will as working an
equitable conversion of all her real estate wherever
situated into personalty. We held that this construc-
tion of the will by the South Carolina court did not
bind our courts as to the testatrix's real estate in Con-
necticut, but that the Connecticut courts could construe
the same clause of the will independently, and reach a
contrary conclusion in so far as real estate in Connecti-
cut was concerned. It follows that the construction
of § 23 of this will, in so far as it affects real estate in
Rhode Island, can only be effectually made in the
Rhode Island courts. Whether Albert R. Braman is
the blank . . . . . Braman mentioned in § 23 of the will,
is a question of construction. *Brinsmade* v. *Beach,*
*ante,* 322, 119 Atl. 233; Gardner on Wills (2d Ed.) p.
339 *et seq.*

The rules of the Superior Court in § 63, subtitle (b),
provide that no declaratory judgment will be rendered
unless there is an actual, bona fide and substantial
question or issue in dispute or substantial uncertainty
of legal relations which require settlement between the
parties. It follows by necessary inference, that the
court in order to act must be in a position to settle
finally the dispute or uncertainty. As shown above,
the Superior Court in this case was not in a position
to render a declaratory judgment that could be effect-
ive in any way to settle the plaintiff's uncertainty as
to his rights to the property in Rhode Island, devised
under § 23 of the will in question. The court, there-

fore, properly sustained the demurrer, as its first ground was well taken.

There is no error.

In this opinion the other judges concurred.