## CLAIRE FISHMAN v. MIDDLESEX MUTUAL ASSURANCE COMPANY
### (2218)

DUPONT, C.P.J., HULL and BORDEN, Js.

340

Argued March 12—decision released June 25—upon reconsideration
affirmed August 6, 1985

*Bruce L. Levin,* with whom, on the brief, was *Serge G. Mihaly,* for the appellant-appellee (defendant).

*Leo Gold,* with whom, on the brief, was *Isadore M. Mackler,* for the appellee-appellant (plaintiff).

BORDEN, J. In this case, we are called upon to interpret General Statutes § 52-410, which provides a judicial mechanism for a party to an arbitration agreement to compel the other party to proceed with arbitration. We are also called upon, ultimately, to decide whether the truncated procedure provided by that statute violates our constitutional principle of the separation of powers.

The plaintiff is the insured under a homeowner's policy issued by the defendant. By a complaint dated December 20, 1982, the plaintiff alleged that she is an insured of the defendant, that the policy contains an

arbitration provision, a copy of which she attached to the complaint,[1] and that the defendant has refused to arbitrate. She sought an order directing the defendant to proceed with arbitration. The complaint was served on the defendant pursuant to a summons directing it to appear on January 18, 1983. Simultaneously, the plaintiff served the defendant with another summons and complaint, returnable on January 23, 1983, for damages under the policy.[2]

On February 22, 1983, the defendant moved to dismiss this action on the grounds, inter alia, that it is a civil action requiring a recognizance which was lacking, and that the pendency of the second action, for damages, rendered this action dismissable. On April 7, 1983, the court, *Geen, J.,* denied the motion. On April 11, 1983, and April 13, 1983, the defendant filed requests to revise the complaint, seeking to require the plaintiff to make her complaint more specific as to the nature, date, cause and amount of the loss, the date of the plaintiff's demand for arbitration, and the date of the defendant's alleged refusal to arbitrate. On April 11, 1983, the defendant also filed notices of inter-

[1] The arbitration clause provides: "Appraisal. If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us."

[2] Although that action forms the basis of one of the defendant's claims on appeal in this case, no judgment has yet been rendered on it and it is not directly before us in this appeal.

rogatories and of requests for production. The plaintiff objected to the requests to revise and to the defendant's discovery requests. The court did not rule on the plaintiff's objections and the plaintiff did not comply with the defendant's requests.

On April 18, 1983, the plaintiff filed a motion for an order to proceed with arbitration, which invoked General Statutes § 52-410, and which sought a hearing on her complaint and an order directing the defendant to proceed with arbitration. The defendant objected.

The plaintiff's motion was heard on July 11, 1983. At the hearing, the plaintiff offered no evidence, but the defendant conceded the contents of the insurance policy between the parties, that it contained the provision at issue; see footnote 1, supra; and that the defendant opposed an order of arbitration. The defendant also disputed coverage.

The court, *Ford, J.,* rendered judgment granting the plaintiff's motion, and ordered the defendant to proceed with arbitration, including the disputed issue of coverage. The defendant appealed, and the plaintiff cross appealed.

One of the grounds of the defendant's appeal coincides with the sole ground of the plaintiff's cross appeal, namely, that the court erred in submitting the question of coverage to arbitration. The parties differ, however, on the reasons for this error and, as a result, differ on the consequences of it. The defendant claims that the court should have decided the coverage question; the plaintiff claims that the defendant waived that question by not presenting it to the court in a timely and appropriate manner.

We agree, for the reasons offered by the defendant, that the court erred by ordering that the issue of coverage be decided by arbitration. We, therefore, find error

on both the appeal and cross appeal as to that issue. As to the other grounds of the defendant's appeal, we find no error.

I

The plaintiff's complaint was brought pursuant to General Statutes § 52-410.[3] That statute provides, in general terms, that a party seeking to compel another party to comply with an arbitration agreement may file a concise complaint with the court. If the defendant does not file an answer within five days of the return day, the parties are considered to be at issue on the complaint, and the court shall hear and dispose of the matter with the least possible delay. The defendant's appeal raises several issues regarding the application of General Statutes § 52-410 to this case, culminating in its claim that the statute unconstitutionally intrudes on the judicial power. We consider the defendant's claims in the inverse order of their seriousness.

---

[3] General Statutes § 52-410 provides: "APPLICATION FOR COURT ORDER TO PROCEED WITH ARBITRATION. (a) A party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order directing the parties to proceed with the arbitration in compliance with their agreement. The application shall be by writ of summons and complaint, served in the manner provided by law.

"(b) The complaint may be in the following form: '1. On . . ., 19. ., the plaintiff and the defendant entered into a written agreement for arbitration, of which exhibit A, hereto attached, is a copy. 2. The defendant has neglected and refused to perform the agreement for arbitration, although the plaintiff is ready and willing to perform the agreement. The plaintiff claims an order directing the defendant to proceed with an arbitration in compliance therewith.'

"(c) The parties shall be considered as at issue on the allegations of the complaint unless the defendant files answer thereto within five days from the return day, and the court or judge shall hear the matter either at a short calendar session, or as a privileged case, or otherwise, in order to dispose of the case with the least possible delay, and shall either grant the order or deny the application, according to the rights of the parties."

## II

The defendant first argues that the court erred by refusing to dismiss the complaint, on the basis of the lack of a recognizance. This argument is premised on the contention that the plaintiff's complaint is a "civil action" which requires a recognizance pursuant to Practice Book §§ 51, 52 and 53. We disagree.

Arbitration proceedings have generally not been viewed as encompassed within the concept of civil actions. E.g., *Dayco Corporation* v. *Fred T. Roberts & Co.*, 192 Conn. 497, 503, 472 A.2d 780 (1984) (arbitration proceedings are not civil actions for purposes of suit, attachment and service of process on partnerships pursuant to General Statutes §§ 52-112 and 52-57 [d]); *Waterbury* v. *Waterbury Police Union,* 176 Conn. 401, 408, 407 A.2d 1013 (1979) (applications to confirm, modify or vacate arbitration awards are not civil actions for purposes of General Statutes title 52); *Skidmore, Owings & Merrill* v. *Connecticut General Life Ins. Co.,* 25 Conn. Sup. 76, 86, 197 A.2d 83 (1963) (arbitration proceeding is not an action for purposes of statute of limitation). These decisions indicate that the determination of whether an arbitration proceeding is a civil action turns on the purpose for which the legislature created the proceeding and the most efficacious way to carry out that purpose. "[T]he word 'action' has no precise meaning and the scope of proceedings which will be included within the term . . . depends upon the nature and purpose of the particular statute in question." *Carbone* v. *Zoning Board of Appeals,* 126 Conn. 602, 605, 13 A.2d 462 (1940). What the legislature may have intended to be a civil action for some purposes may not be a civil action for others. *Skidmore, Owings & Merrill* v. *Connecticut General Life Ins. Co.,* supra; see *Boltuch* v. *Rainaud,* 137 Conn. 298, 301, 77 A.2d 94 (1950).

The purposes for which arbitration was created indicate that an application to compel arbitration is not a civil action in the context of the requirements for a recognizance. Arbitration proceedings, including court proceedings to compel arbitration, are creatures of statute in Connecticut and are not common law actions. See General Statutes §§ 52-408 through 52-424; *Skidmore, Owings & Merrill* v. *Connecticut General Life Ins. Co.,* supra, 84; see also 5 Am. Jur. 2d, Arbitration and Award § 6; see generally Sturges, Commercial Arbitration and Awards. These statutes are enacted to create "an arrangement for taking and abiding by the judgment of selected persons in some disputed matter, instead of carrying it to the established tribunals of justice; and is intended to avoid the formalities, the delay, the expense and vexation of ordinary litigation." *In re Curtis-Castle Arbitration,* 64 Conn. 501, 511, 30 A. 769 (1894); *Dayco Corporation* v. *Fred T. Roberts & Co.,* supra; *Boltuch* v. *Rainaud,* supra; *Skidmore, Owings & Merrill* v. *Connecticut General Life Ins. Co.,* supra.

In various situations, such as compelling arbitration or correcting an arbitration award, parties to arbitration proceedings are permitted to seek the assistance of the court. *Boltuch* v. *Rainaud,* supra. Resort to the court in these situations, however, does not alter the form of the proceedings from one involving arbitration into a full-fledged civil action. The policies of avoiding the formalities, expense and delay of ordinary litigation still attach. To the extent that arbitration proceedings are viewed as requiring all the formal trappings of civil actions, those policies would be frustrated.

This is especially true where an application to compel arbitration is involved. General Statutes § 52-410 allows a party to apply to the Superior Court for an order compelling a recalcitrant party to a written agreement for arbitration to proceed with arbitration.

Subsection (c) of this statute provides that "the court or judge shall hear the matter either at a short calendar session, or as a privileged case, or otherwise, in order to dispose of the case with the least possible delay . . . ." See footnote 3, supra. This language demonstrates that the legislature, like the courts, "favor[s] arbitration as a means of settling differences and expediting the resolution of disputes." *Trumbull* v. *Trumbull Police Local 1745*, 1 Conn. App. 207, 211, 470 A.2d 1219 (1984); see also *Bridgeport* v. *Bridgeport Police Local 1159*, 183 Conn. 102, 107, 438 A.2d 1171 (1981). These means would be thwarted if a party, who contractually agreed to the arbitration but refuses to proceed with it, is able to slow down this favored process not only by requiring the other party to seek the court's intervention, but also by insisting on all the procedural formalities, delays, and costs of an ordinary civil action. Although a recognizance for costs is important to ensure diligent prosecution and is required within a writ of civil process in some other proceedings which are not considered civil actions; *Sheehan* v. *Zoning Commission*, 173 Conn. 408, 411–12, 378 A.2d 519 (1977); such a requirement in arbitration proceedings would serve only to obstruct the legislative intent behind General Statutes § 52-410.

The defendant argues that the 1978 promulgation of Practice Book § 256, which provided in part that "administrative appeals are civil actions," judicially abrogates the cases formerly holding that administrative appeals were not civil actions; e.g., *Chieppo* v. *Robert E. McMichael, Inc.*, 169 Conn. 646, 653, 363 A.2d 1085 (1975); *Bank Building & Equipment Corporation* v. *Architectural Examining Board*, 153 Conn. 121, 124, 214 A.2d 377 (1965); and that arbitration proceedings are covered by its provisions. This argument fails to take into account, however, that the decisions affected by this amendment involved appeals from administrative agencies. E.g., *Chieppo* v. *Robert E.*

*McMichael, Inc.,* supra (appeal from workers' compensation commissioner); *Bank Building & Equipment Corporation* v. *Architectural Examining Board,* supra (appeal from examining board); *Carbone* v. *Zoning Board of Appeals,* supra (appeal from zoning board). Cases involving arbitration proceedings since the promulgation of the rule, although not specifically mentioning Practice Book § 256, have indicated that this section is not apropos to arbitration proceedings. *Dayco Corporation* v. *Fred T. Roberts & Co.,* supra (arbitration proceedings are not civil actions for purposes of General Statutes §§ 52-112, 52-57 [d]); *Waterbury* v. *Waterbury Police Union,* supra (proceedings to confirm, modify or vacate arbitration awards are not civil actions). It, therefore, does not compel us to conclude that they are civil actions.[4]

## III

The defendant next claims that the court erred by refusing to dismiss the complaint on the basis of the pendency of the other action. This claim is without merit.

The rule permitting dismissal of an action because of a prior pending action does not apply when the two

---

[4] In *Waterbury* v. *Waterbury Police Union,* 176 Conn. 401, 407 A.2d 1013 (1979), the court reached its conclusion that "proceedings brought pursuant to § 52-420 to confirm, modify or vacate arbitration awards are not civil actions within the meaning of title 52"; id., 408; by looking to the legislative objective establishing special proceedings such as arbitration and whether the objective would be frustrated by holding them to be civil actions. The court in this regard looked to the rationale of *Chieppo* v. *Robert E. McMichael, Inc.,* 169 Conn. 646, 363 A.2d 1085 (1975), and other administrative appeal cases. In so doing, the court did not imply that arbitration proceedings were administrative appeals controlled by Practice Book § 256. Rather, the court indicated that where there is no specific expression such as § 256 stating a proceeding is a civil action, the court must examine the legislative purposes behind the creation of the proceeding and the effect on those purposes if the proceedings are considered civil actions. That this was the analysis used by the courts for administrative appeals prior to the promulgation of § 256 does not suggest that § 256 now governs arbitration proceedings, for which there is no specific language stating that they are to be treated as civil actions.

actions are for different purposes or ends, or where they involve different issues. *Nielsen* v. *Nielsen,* 3 Conn. App. 679, 682, 491 A.2d 1112 (1985). Here, the other action seeks damages under the insurance policy; this action seeks only an order compelling the defendant to arbitrate. Furthermore, as the trial court pointed out, the insurance policy has a one year limitation of action clause. The purpose of the other action is simply to preserve the plaintiff's rights in the event that she fails in her attempt to compel arbitration by this action. Since there is a valid reason for bringing the other action, it is not vexatious or oppressive, and the rule of dismissal does not apply. *Southland Corporation* v. *Vernon,* 1 Conn. App. 439, 452, 473 A.2d 318 (1984). Upon an order compelling arbitration in this action, the other action may be stayed. See General Statutes § 52-409.

## IV

The defendant's next claim is that General Statutes § 52-410 does not apply to this case, because the clause relied on by the plaintiff calls for appraisal, not arbitration. See footnote 1, supra. This claim is disposed of by *Covenant Ins. Co.* v. *Banks,* 177 Conn. 273, 279–80, 413 A.2d 862 (1979).

## V

The defendant also argues that the court erred by adjudicating the controversy before the pleadings were formally closed and while the defendant's discovery requests were unanswered. We disagree.

We first consider that prong of the defendant's argument regarding the closing of the pleadings. The defendant claims that, despite the statute; see footnote 3, supra; it was entitled to the full panoply of pleadings provided by Practice Book § 112,[5] and that,

---

[5] Practice Book § 112 provides as follows: "SEC. 112. ——PLEADINGS ALLOWED AND THEIR ORDER

The order of pleading shall be as follows:

because its request to revise had neither been complied with nor the plaintiff's objection to it sustained, the court could not adjudicate the plaintiff's complaint.

We need not decide, on this record, whether the statute deprives the defendant of the right to dismiss or strike the plaintiff's complaint, since the defendant here did not file either such motion. See Practice Book § 112 (2) and (3); footnote 5, supra. We agree with the trial court, however, that the statute does not contemplate that a request to revise may be interposed between the plaintiff's complaint and the defendant's answer. This position is consistent with the underlying purpose of the statute, which is to provide a prompt and "appropriate procedure for an insured who needs judicial assistance when an insurer unreasonably refuses to proceed with the appraisal procedure specified in the insurance contract"; *Covenant Ins. Co.* v. *Banks,* supra, 278; as an alternative "to an expensive and time-consuming suit on the policy for the amount of the loss." Id., 280. This is also consistent with the fact that the statute describes the basic, minimal allegations of a claim brought pursuant to its provisions. General Statutes § 52-410 (b); see footnote 3, supra. The plaintiff's complaint essentially conformed to the provisions of that statute.

The statute seeks to avoid unnecessary delays in bringing the issues to a head by providing that, if the defendant does not file an answer within five days of the return day, the parties are to be considered at issue

(1) The plaintiff's complaint.

(2) The defendant's motion to dismiss the complaint.

(3) The defendant's request to revise the complaint.

(4) The defendant's motion to strike the complaint.

(5) The defendant's answer (including any special defenses) to the complaint.

(6) The plaintiff's request to revise the defendant's answer.

(7) The plaintiff's motion to strike the defendant's answer.

(8) The plaintiff's reply to any special defenses."

on the allegations of the complaint. "The last sentence of the portion of [General Statutes § 52-410 (c)] delineates the procedure to be followed . . . ." *Visselli* v. *American Fidelity Co.,* 155 Conn. 622, 627, 237 A.2d 561 (1967). The pleadings were closed here by virtue of the defendant's failure to file an answer within the five day period.

This does not mean, however, that the defendant was deprived of the right to any special defenses which it may have had. Special defenses are a part of the answer to a complaint. Practice Book § 112 (5); footnote 5, supra. Special defenses contesting coverage may be filed as part of the answer to an action to compel arbitration under an insurance contract, pursuant to General Statutes § 52-410. See *Visselli* v. *American Fidelity Co.,* supra, 624, 626. In such a case, by filing such a special defense, the defendant would not be assuming the burden of proof of that issue; the special defense would simply raise the issue, the burden of proof of which would remain on the plaintiff. Id., 626–27; *Frager* v. *Pennsylvania General Ins. Co.,* 155 Conn. 270, 278, 231 A.2d 531 (1967); *Rochon* v. *Preferred Accident Ins. Co.,* 118 Conn. 190, 195, 171 A. 429 (1934).[6]

The statute, however, precludes the defendant from successfully claiming that its discovery requests were required to be ruled on and complied with before the action could be decided. Besides describing the basic form of the complaint for an application to compel arbitration, General Statutes § 52-410 also accelerates the pleading process and provides that "the court or judge

---

[6] We note, however, that *Frager* v. *Pennsylvania General Ins. Co.,* 155 Conn. 270, 231 A.2d 531 (1967), and its progeny, including *Visselli* v. *American Fidelity Co.,* 155 Conn. 622, 237 A.2d 561 (1967), have been legislatively overruled by General Statutes § 38-175c to the extent that they held that an insurer could limit the issues relating to uninsured motorist coverage which the arbitrator could decide. *Oliva* v. *Aetna Casualty & Surety Co.,* 181 Conn. 37, 41, 434 A.2d 304 (1980). That statute is not involved here.

shall hear the matter either at a short calendar session, or as a privileged case, or otherwise, in order to dispose of the case with the least possible delay, and shall either grant the order or deny the application, according to the rights of the parties." These provisions emphasize the statute's purpose of avoiding unnecessary delays in deciding the issue of whether to compel arbitration by indicating that a proceeding under this statute does not follow the normal progression of a civil action.

Since a proceeding under General Statutes § 52-410 does not follow the pattern of an ordinary civil action it cannot be seen as a civil action for purposes of discovery as well as for purposes of pleading. Our rationale for determining that these proceedings are not civil actions for purposes of a recognizance requirement is just as applicable in this context. The policies behind a proceeding to compel arbitration are equally frustrated by a delay due to discovery as a delay due to insistence on pleading formalities. We see no reason to suggest that this proceeding undertakes a change in form between the two stages of pleading and discovery.

The discovery process as set out in the Practice Book, therefore, is not applicable to proceedings under General Statutes § 52-410. Cf. *Southland Corporation* v. *Vernon,* 1 Conn. App. 439, 473 A.2d 318 (1984) (summary process); *Housing Authority* v. *Boyd,* 36 Conn. Sup. 47, 410 A.2d 494 (1979) (same). The Practice Book provisions governing the discovery process apply only to "any civil action . . . probate appeal, or . . . administrative appeal." Practice Book §§ 218, 223, 227, 229; see also General Statutes § 52-197. The defendant, therefore, was not entitled to compliance with its discovery requests or a ruling on them before the plaintiff's claim was adjudicated.

## VI

The defendant next argues that the court erred by ordering that the issue of coverage, which the defendant disputed, be determined by the arbitrators. We agree.

In an action to compel arbitration under an insurance policy clause such as this one; see footnote 1, supra; the issue of coverage is an antecedent question for the court. *Covenant Ins. Co.* v. *Banks,* supra, 280. Although the defendant did not, as it should have, file an answer and special defense raising this issue, the proper course was unclear enough to excuse the defendant, which had made it clear at the hearing on the plaintiff's motion to compel arbitration that it disputed coverage. Thus, on remand it will be necessary for the trial court to resolve the disputed issue of coverage.

## VII

This leaves the defendant's principal claim on this appeal, namely that General Statutes § 52-410 (c) violates the constitutional doctrine of the separation of powers. The statute provides for a truncated pleading procedure and timetable, including an answer within five days of the return day. See footnote 3, supra. The Practice Book provides for a more elaborate set of pleadings, which advance at fifteen day intervals from the return day. Practice Book § 112; see footnote 5, supra. The defendant's argument is that, by mandating when an answer must be filed, when the parties are at issue and when the court shall hear the case, the statute supersedes the Practice Book rules governing the timing and order of pleadings. Thus, the defendant maintains, the statute purports to govern matters of court procedure which are within the exclusive province of the judiciary. See *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 461 A.2d 938 (1983); *State* v. *Clemente,* 166 Conn. 501, 353 A.2d 723 (1974).

The difficult burden imposed on one who challenges the constitutionality of a state statute is by now familiar and has been oft-stated. Every statute is presumed constitutional, and its invalidity must be established beyond a reasonable doubt. *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* supra, 522; *Eielson* v. *Parker,* 179 Conn. 552, 557, 427 A.2d 814 (1980). This presumption of constitutionality is "strong," the constitutional breach must be "clear and unequivocal," courts approach the question "with great caution [and] . . . infinite care," and "[t]he one attacking the legislation has the burden to negative every conceivable basis which might support it." *Peck* v. *Jacquemin,* 196 Conn. 53, 64–65, 491 A.2d 1043 (1985). We cannot say that the defendant has carried this burden.

A statute which is challenged on the ground that it impermissibly intrudes on the judicial power is not invalid " 'simply because it affects the judicial function, so long as it is an exercise of power assigned by the constitution to the legislature.' *Eielson* v. *Parker,* supra, 560; *State* v. *Darden,* [171 Conn. 677, 680–81, 372 A.2d 99 (1976)]. In many situations, executive, legislative and judicial powers necessarily overlap. In such situations, a statute is not unconstitutional unless 'it represents an effort by the legislature to exercise a power which lies exclusively under the control of the courts; *State* v. *Clemente,* 166 Conn. 501, 507, 510–11, 353 A.2d 723 [1974]; *Heiberger* v. *Clark,* 148 Conn. 177, 169 A.2d 652 [1961]; *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* 145 Conn. 222, 140 A.2d 863 [1958] . . . .' " *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* supra, quoting *State* v. *Darden,* supra, 679.[7]

Because of the broad language used by our Supreme Court in other contexts indicating that the legislature

---

[7] Such a statute may also be unconstitutional if it significantly interferes with the orderly conduct of the court. *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 522, 461 A.2d 938 (1983). The defendant does not claim any such infirmity here, nor do we perceive one.

has "no power to make rules of administration, practice or procedure which are binding on . . . constitutional courts"; *Adams* v. *Rubinow,* 157 Conn. 150, 156, 251 A.2d 49 (1968); see also *State* v. *Clemente,* supra, 507; *State ex rel. Kelman* v. *Schaffer,* 161 Conn. 522, 529, 290 A.2d 327 (1971);[8] we recognize that a superficial view of the statute could lead to a conclusion of unconstitutionality. We are also aware, however, that "grave constitutional questions cannot be so easily solved. 'The rule of separation of governmental powers cannot always be rigidly applied.' *Matter of Rosenthal* v. *McGoldrick,* 280 N.Y. 11, 14, 19 N.E.2d 660; 20 Am. Jur. 2d, 432, Courts, § 65." *Adams* v. *Rubinow,* supra, 155. "There are activities in which both the legislature and the judiciary may engage without violating the prohibitions of the constitution." *State* v. *Clemente,* supra, 510.

Within the great edifice of our constitution, the rooms assigned to the legislative and judicial magistracies are not always separated by impenetrable walls. Rather, they often open onto each other so that each can accommodate the proper functions of its occupants and can also properly aid the occupants of the neighboring rooms in the proper performance of their functions. This metaphor expresses the broad allocation of legislative and judicial powers, which has been traditionally "drawn as follows: 'It is the province of the legislative department to define rights and prescribe remedies: of the judicial to construe legislative enactments, determine the rights secured thereby, and apply the remedies prescribed.' *Atwood* v. *Buckingham,* 78 Conn. 423, 428, 62 A. 616 [1905]." *State* v. *Clemente,* supra, 509–10. We hold that General Statutes § 52-410 falls within that traditional allocation, as a legislative definition of rights and prescription of remedy.

---

[8] The constitutional courts are now the Supreme Court, the Appellate Court, and the Superior Court. Conn. Const., amend. XX.

It is not necessary to review here the unique history of our state's constitutional doctrine of the separation of powers. See, e.g., *Szarwak* v. *Warden,* 167 Conn. 10, 355 A.2d 49 (1974); *State* v. *Clemente,* supra; *Adams* v. *Rubinow,* supra. Suffice it to say that the judicial historians who have so ably reviewed that history generally recognize the watershed significance of *Norwalk Street Ry. Co.'s Appeal,* 69 Conn. 576, 37 A. 1080 (1897), and *Bridgeport Public Library & Reading Room* v. *Burroughs Home,* 85 Conn. 309, 82 A. 582 (1912). Those two cases recognized, contrary to earlier thought, that the powers granted by the people to the legislature and to the judiciary are legislative and judicial, respectively, only. *Adams* v. *Rubinow,* supra, 154. From that recognition has flowed a small spate of decisions involving questions of legislative intrusion on the judicial rule-making function. See, e.g., *Mitchell* v. *Mitchell,* 194 Conn. 312, 481 A.2d 31 (1984); cf. *Steadwell* v. *Warden,* 186 Conn. 153, 162, 439 A.2d 1078 (1982) (court lacks power to promulgate rule governing substantive rights and remedies, which is legislative function); *State* v. *King,* 187 Conn. 292, 445 A.2d 901 (1982); *State* v. *Clemente,* supra; *State ex rel. Kelman* v. *Schaffer,* supra; *In re Appeal of Dattilo,* 136 Conn. 488, 72 A.2d 50 (1950).

Long after the historic recognition wrought by *Norwalk* and *Bridgeport Public Library,* however, the Supreme Court continued to recognize the validity of statutes which on their face seemed to be procedural but which, nonetheless, passed constitutional muster. In *Braman* v. *Babcock,* 98 Conn. 549, 120 A. 150 (1923), the court upheld the Declaratory Judgment Act, holding that the separation of powers did not preclude the legislature from "further enlarg[ing] our methods of remedial justice by authorizing the extension of the novel method of judicial procedure by way of declaratory judgments, to all rights and legal relations." Id., 556. In *In the Matter of Gilhuly's Petition,* 124 Conn.

271, 199 A. 436 (1938), the court approved the constitutionality of then General Statutes § 703, now General Statutes § 9-63, which creates a prompt and simple judicial remedy for a party-affiliated elector who has been removed from his party's enrolment list. "This statute, apparently adopted by the Legislature to provide a simpler and more expeditious remedy [than mandamus], so likely upon occasion to be essential to the proper safeguarding of one's party rights, *was procedural and within its undoubted power . . . .*" (Emphasis added.) Id., 280. Indeed, General Statutes § 9-63 mandates, in fashion similar to General Statutes § 52-410 at issue in this case, that the court "shall assign the [petition] for a hearing at the earliest practicable date . . . ."

These cases stand for the proposition that where public policy, as perceived by the legislature, requires a simple and prompt proceeding in order to implement parties' rights, the legislature is not prohibited by the constitution from creating a statutory proceeding which provides for that simplicity and promptness, and which, in order to insure simplicity and promptness, enacts as part and parcel of the statutory proceeding certain minimal procedural incidents. In such a case, the legislature is acting within its historic and traditional function of defining rights and prescribing remedies. *Atwood* v. *Buckingham,* supra. We conclude that General Statutes § 52-410 falls within that category of statutes.

This conclusion is buttressed by our strong policy, both legislative and judicial, favoring arbitration as a means of settling disputes. *John A. Errichetti Associates* v. *Boutin,* 183 Conn. 481, 488, 439 A.2d 416 (1981); *Trumbull* v. *Trumbull Police Union Local 1745,* 1 Conn. App. 207, 211, 470 A.2d 1219 (1984). An action to compel arbitration is precisely the kind of proceeding which requires simplicity and promptness. *Covenant Ins. Co.* v. *Banks,* supra, 278–80. We cannot say beyond

a reasonable doubt that the constitution denies the legislature the power to implement that policy in the fashion provided for by General Statutes § 52-410.

Furthermore, even under the rubric which allocates to the judiciary the exclusive power to make rules governing practice and procedure, that allocation is not absolute. "The effect of the development in the understanding of the true meaning of the constitutional provision for separation of powers, in the intervening years since 1818, as far as rule making is concerned, is that the General Assembly has no power to make rules of administration, practice or procedure which are binding on . . . the . . . constitutional courts *and that any attempt on its part to exercise such power is dependent, for its efficacy, upon the acquiescence of the constitutional court involved. In re Appeal of Dattilo,* 136 Conn. 488, 492, 72 A.2d 50 [1950]. *Manifestation of such acquiescence may, although it need not, take the form of the adoption of the statutory rule as a rule of court in the exercise of the court's inherent rule-making power. Heiberger* v. *Clark,* [148 Conn. 177, 185, 169 A.2d 652 (1961)]; *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* [145 Conn. 222, 231, 140 A.2d 863 (1958)]." (Emphasis added.) *Adams* v. *Rubinow,* supra, 156.

The Supreme Court has, therefore, recognized that the judiciary may properly acquiesce in a legislatively created procedure, and that the form of such acquiescence is not limited to adopting the statutory procedure as a rule of court. Thus, the fact that the judges of the Superior Court have not adopted rules mirroring General Statutes § 52-410, as they have done with respect to other statutory procedures; see, e.g., Practice Book § 362A (summary process procedure); is not determinative of the constitutional argument.

General Statutes § 52-410 is the progeny of section 3 of Public Acts 1929, No. 593, entitled "An Act Provid-

ing For The Arbitration Of Disputes," enacted in April, 1929, and codified as § 5842 of the 1930 General Statutes. It has remained virtually unchanged since. There have never been any rules of court adopted to implement it. Nonetheless, we have no doubt that in the more than fifty-six intervening years there have been hundreds, if not thousands, of proceedings held in the Superior Court pursuant to it. There have been thirteen Supreme Court and Appellate Court cases construing it and approving its procedures.[9] To the extent that General Statutes § 52-410 represents a legislative attempt at rule-making, we have no hesitancy in finding, from this history, manifest acquiescence by the Superior Court in that attempt. *Adams* v. *Rubinow,* supra.

We acknowledge that long acquiescence by the courts in legislation does not automatically preclude review of the validity of that legislation. *State* v. *DellaCamera,* 166 Conn. 557, 561–62, 353 A.2d 750 (1974). Even upon review after long acquiescence, " '[i]f the invalidity of the enactment is evident beyond a reasonable doubt, our duty, delicate as the task may be, is to nullify the statute.' " Id., 562. As we have previously discussed,

---

[9] See *John A. Errichetti Associates* v. *Boutin,* 183 Conn. 481, 439 A.2d 416 (1981); *W. J. Megin, Inc.* v. *State,* 181 Conn. 47, 434 A.2d 306 (1980); *Oliva* v. *Aetna Casualty & Surety Co.,* 181 Conn. 37, 434 A.2d 304 (1980); *Covenant Ins. Co.* v. *Banks,* 177 Conn. 273, 413 A.2d 862 (1979); *A. Sangivanni & Sons* v. *F. M. Floryan & Co.,* 158 Conn. 467, 262 A.2d 159 (1969); *Visselli* v. *American Fidelity Co.,* 155 Conn. 622, 237 A.2d 561 (1967); *Frager* v. *Pennsylvania General Ins. Co.,* 155 Conn. 270, 231 A.2d 531 (1967); *Mayron's Bake Shops, Inc.* v. *Arrow Stores, Inc.,* 149 Conn. 149, 154, 176 A.2d 574 (1961); *International Union* v. *General Electric Co.,* 148 Conn. 693, 174 A.2d 298 (1961); *Dewart* v. *Northeastern Gas Transmission Co.,* 140 Conn. 446, 101 A.2d 299 (1953); *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 82 A.2d 345 (1951); *Colt's Industrial Union* v. *Colt's Mfg. Co.,* 137 Conn. 305, 77 A.2d 301 (1950); *Southington* v. *Major Machinery Corporation,* 1 Conn. App. 253, 470 A.2d 1230 (1984).

however, the invalidity of this statute has not been established beyond a reasonable doubt and we need not perform this delicate duty.

There is error in part on the appeal and the cross appeal, the judgment is set aside and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.