[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action seeking to compel arbitration of plaintiff's uninsured motorist claim for injuries he received on September 25, 1987.
The defendant filed an Answer and Special Defense. The Special Defense asserts that the plaintiff was a converter of the vehicle owned by Stephen Chilinsky, insured by the defendant, being operated by his daughter, Magdalena Chilinsky, on the day of the accident. Stephen Chilinsky had only authorized his daughter Magdalena to operate the vehicle up to the date of the accident. Magdalena Chilinsky customarily used the vehicle to go between home and her college.
The Special Defense raised by the defendant in this action under section 38-331 of the Connecticut General Statutes is a threshold question to be first decided before arbitration can be ordered. (Memorandum of Decision, July 7, 1989, Kulawiz, J.).
In deciding the ultimate issue to arbitrate by this Court, it is called upon to answer the following questions:
 1) Which party has the burden of proof with respect to the issue of conversion raised under the Special Defense pursuant to section 38-331 C.G.S.?
2) Whether the plaintiff has the (a) express CT Page 380 or implied permission of Stephen Chilinsky or Magdalena Chilinsky at relevant times to use the vehicle, or (b) had a good faith belief that he could "use" the vehicle.
The plaintiff seeks arbitration under the policy of insurance, not under the theory of another uninsured vehicle being involved but rather in his injuries he suffered, as a user when the single vehicle accident in which he was riding on the night of the injuries was being operated by an uninsured operator.
This Court agrees with the decision of Kulawiz, J. (July 7, 1989). The preliminary determination of whether the policy was in effect raised by the defense under Conn. Gen. Stat. 38-331 is a question to be first determined by the Court before deciding whether to submit it to arbitration. (See James Bell v. Peerless Insurance, C.L.T., Hodgson, J., New Haven, No. 264732, 6/27/88, Issue of Cancellation Threshold Question). Similarly, issue of conversion threshold question. It would be unfair to require costly protracted arbitration under the theory that it be submitted to arbitrators for all purposes. (See Employer's Commercial Union Insurance Company v. White, Callahan, J., 4 C.L.T., No. 37 p. 11).
In answer to the first question who has the burden of proof, when seeking arbitration, once the issue of use is raised by way of the Special Defense under Conn. Gen. Stat. 38-331, the burden of proof still remains with the party seeking arbitration notwithstanding the issue raised by a Special Defense. The Special Defense raises the issue while the burden of proof still rests on the plaintiff. Fishman v. Middlesex Mutual Assurance Co., 4 Conn. App. 339, 494 A.2d 606, 613 (1985).
In a contest of coverage under the insurance policy in this case which involves the question of use, as contemplated by 38-331 of Conn. Gen. Stat., it still remains the burden of proof for the plaintiff to establish he is entitled to arbitration. Pawlinski v. Allstate Insurance Co.,165 Conn. 1 (1973).
Although there is an exclusion contained within the policy in this case for non-permission use, it does not shift the burden of proof when the issue is raised under 38-331 of Conn. Gen. Stat.
The second question to be answered is whether the plaintiff had express or implied permission or a good CT Page 381 faith belief that he was entitled to use the vehicle.
On September 24, 1987, the insured vehicle owned by Stephen A. Chilinsky, driven by the authorized driver, his daughter, Magdalena, had picked up William F. Gaudet (Gaudet), a seventeen year old, and James Robinson (Robinson), a twenty year old, and driven from Bridgeport to Central Connecticut University in New Britain, Connecticut. Magdalena was a student who used the vehicle with permission of the owner-insured to go to and from school from her house in Bridgeport, and solely for her use. Magdalena had met Gaudet at the house of John Leone (Leone) during the summer of 1987.
While at Central Connecticut, Gaudet and Robinson had disappeared for a period of time. Prior to picking up Robinson, on this day Magdalena had not known Robinson. Gaudet had been in the insured vehicle during the summer of 1987. Gaudet testified he had driven the car on one occasion with Magdalena during the summer of 1987, two weeks before the accident of September 25, 1987. Such operation was disputed and there is not sufficient credible evidence to establish Gaudet had ever used the vehicle as an operator prior to the accident.
Gaudet was a heavy drinker starting in 1986 and in another lawsuit arising out of this accident, against Leone, he alleged that Leone made available a great deal of liquor at Leone's house and he had kept drinking, becoming intoxicated on the night of the accident when the Chilinsky vehicle stopped at Leone's home. Gaudet testified he and Magdalena consumed alcohol while at Central Connecticut before stopping at the Leone home. There is no dispute that Gaudet was driven back to Leone's house. While at the Leone house where they were made welcome as they had been in the past, alcohol consumption continued by Gaudet and Robinson.
Gaudet had a drug problem with cocaine as well as alcohol prior to the accident.
Leone testified that both Gaudet and Robinson, when they arrived at his house, were intoxicated. Gaudet had insisted he wanted to go home to Bridgeport. Gaudet was loud and difficult to control when they arrived at the Leone house at about 11:30 p. m.
Magdalena was tired and did not want to drive to Bridgeport. Magdalena had never given permission to either Gaudet or Robinson to use the vehicle. CT Page 382
Magdalena retired in the bedroom of Patrick Kundert, a boarder in the Leone household and cousin of Gaudet. Gaudet and Robinson were also made welcome, given blankets and invited to stay overnight.
Magdalena took extra precaution to conceal the keys in her pocketbook as well as her credit cards, her social security card and cassette tapes.
Magdalena testified she saw Robinson come into her darkened bedroom during the night and the next thing she remembered was the sound of a vehicle "peeling" out of the driveway. She became upset and worried and called into the Police Department that her vehicle was stolen. Magdalena did not give permission to use the vehicle to either Gaudet or Robinson. She noticed her pocketbook had been rifled through and all her credit cards and keys had been stolen.
Leone, Kundert and Magdalena went to search for the vehicle and arrived at the accident scene.
Police Officer Mary Mallinson Ehler (Ehler) testified that when she arrived at the scene of the accident Robinson was in the front seat and Gaudet was in the rear. The impact was so great no clear evidence was shown as to how Gaudet was in the rear of the vehicle. The vehicle was totally destroyed. Robinson was pronounced dead on arrival at Yale-New Haven Hospital at 4:13 a.m. Robinson's blood alcohol level was .15 by weight and Gaudet's blood alcohol level was .146. Ehler received the call regarding the accident at 3:29 a.m. and arrived at the scene at 3:38 a.m.
The personal credit cards of Magdalena were taken from either Gaudet or Robinson at the hospital. Magdalena identified the stolen articles at the police department as belonging to her. It is clear from the evidence adduced at trial that the credit cards, social security card and cassette tapes were taken illegally from Magdalena and were found on the person of either Robinson or Gaudet at the hospital. This Court draws the reasonable and logical inference that Gaudet knew of the illegal taking of the personal items of Magdalena and participated at the least in their taking.
The evidence at trial preponderates in favor of Magdalena Chilinsky that she did not allow or give permission to anyone else to use her father's vehicle. The applicant, CT Page 383 who suffered very serious injuries, cannot have reasonably believed that he had permission to use the vehicle before or on the night in question.
No permission was given to either Robinson or Gaudet to use the vehicle.
This Court finds that the insured vehicle was converted under 38-313 of Conn. Gen. Stat.
The argument briefed by the plaintiff claims that the conversion defense lacks specific legal elements not proven at trial, i.e., that conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another permanently or for an indefinite term. Such argument is not persuasive in this case. The evidence did not demonstrate who was the converter, only that the conversion took place and that Gaudet participated in an unlawful activity; public policy prevents recovery. The Employee's Commercial Union Insurance Company v. Joe Louis White, 4 Conn. Law Trib. No. 37, p. 11.
The plaintiff cannot, from the evidence adduced at trial, establish that he was under a good faith belief that he was a permissive user.
The plaintiff must go further than just show that he was an occupant of the car at the time of the injury; that there exists no liability insurance policies to answer for his injuries; and that there is a demand for arbitration.
The defendant, insurance carrier, having raised the conversion defense pursuant to Conn. Gen. Stat. 38-331, requires the applicant to further prove by a preponderance of the evidence, no conversion or a good faith belief by the applicant that he had permission to use the vehicle under the coverages provided. The plaintiff has not met this burden.
Accordingly, the application to compel arbitration is denied.
FRANK S. MEADOW, J.